UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARNEST TAYLOR,

    Plaintiff,                 CIVIL ACTION NO. 09-12756

    v.                     DISTRICT JUDGE DAVID M. LAWSON

MALATINSKY, STEVEN GIDEL,     MAGISTRATE JUDGE VIRGINIA MORGAN
R. POMALOY, ESANTA CRUZ,
JOHN UPP, and MARIO BAYONETO,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D/E #24)**

**I. Introduction**

This is a *pro se* action in which the plaintiff, an inmate in the custody of the Federal Bureau of Prisons, alleges that the defendants deprived plaintiff of his rights under the United States Constitution through their deliberate indifference to his serious medical needs. The matter comes before the court on defendants' Motion for Summary Judgment (D/E #24). Plaintiff filed a response in opposition to defendant's motion for summary judgment (D/E #29) and defendants filed a reply to that response (D/E #32). For the reasons stated below, this court recommends that defendants' motion be **GRANTED,** summary judgment be entered in favor of defendants, and this case be closed.

## II. Background

### A. Procedural History

### 1. Complaint

On July 14, 2009, plaintiff filed a complaint against defendants in this matter (D/E #1). In that complaint, plaintiff alleges that, on August 8, 2007, he fell down and was injured while climbing some stairs at the Federal Correctional Institution in Milan, Michigan ("FCI Milan"). According to plaintiff, he fell because his hands were handcuffed behind his back as he attempted to climb the stairs and because the stairs were very narrow. Plaintiff also alleges that, since the fall, defendants have been deliberately indifferent to the severe pain he has been suffering from in his back and right elbow. As relief, plaintiff seeks proper medical care and monetary damages.

### 2. Motion Before the Court

On June 28, 2010, defendants filed the motion for summary judgment pending before the court (D/E #24). In that motion, defendants argue that plaintiff's claims against them in their individual capacities are barred by their qualified immunity. Defendants also argue that, to the extent plaintiff asserts any claims against them in their official capacities, those claims are barred by sovereign immunity. Defendants further argue that defendant Bayoneto was not personally involved in any of the alleged constitutional violations and that, consequently, he is entitled to summary judgment on that basis as well.

On August 30, 2010, plaintiff filed a response in opposition to defendants' motion for summary judgment (D/E #32). In that response, plaintiff argues that he has a clear right to

proper medical care under the Eighth Amendment to the United States Constitution and that defendants violated that right through their deliberate indifference to his serious medical needs. Specifically, plaintiff asserts that defendants have denied his reasonable requests for medications, proper medical attention for his pain, and x-rays of his damaged shoulder, elbow and hand. Plaintiff does concede, however, that he is only suing defendants in their individual capacities and that any claims against defendants in their official capacities are waived.

On September 9, 2010, defendants filed a reply to plaintiff's response (D/E #32). In that reply brief, defendants again argue that plaintiff merely disputes how he was treated and that mere differences in treatment choices do not rise to the level of deliberate indifference.

**B. Factual Record**

On August 8, 2007, around 12:45 p.m., Officers David Wilson and Mark Cote starting escorting plaintiff to a disciplinary hearing in the special housing unit at FCI Milan.[1] Plaintiff's hands were restrained behind his back at that time because he was proceeding through a high security area.[2] The three men eventually approached a narrow, four step staircase heading up to the disciplinary hearing office.[3] As the stairs were too narrow for two people to climb them side-

---

[1] Declaration of David Wilson, ¶ 4, attached as Exhibit 5 to Defendants' Motion for Summary Judgment; Declaration of Mark Cote, ¶ 3, attached as Exhibit 6 to Defendants' Motion for Summary Judgment.

[2] Declaration of David Wilson, ¶ 5; Declaration of Mark Cote, ¶ 4; Deposition of Plaintiff, pp. 37-38; attached as Exhibit 16 to Defendants' Motion for Summary Judgment.

[3] Declaration of David Wilson, ¶ 6; Declaration of Mark Cote, ¶ 5.

by-side, plaintiff proceeded up the steps with Officer Wilson behind him.[4] Plaintiff lost his balance and fell forward, landing on his shoulder.[5] Plaintiff was unable to break his fall with his hands as they were restrained behind his back.[6] The officers helped plaintiff up and walked with him to a bench outside the disciplinary hearing office.[7] They also removed his restraints, so that plaintiff could check his shoulder, and they suggested that he seek medical attention.[8] The disciplinary hearing was subsequently cancelled and Officer Cote escorted plaintiff to Health Services.[9]

At approximately 1:42 p.m. on that same day, defendant John Upp, a registered nurse at FCI Milan, assessed plaintiff's injuries.[10] According to Upp's Declaration and treatment notes, while plaintiff reported that he "was cuffed and fell on [his] left shoulder[,]" Upp evaluated plaintiff and noted that his shoulder was not swollen or deformed.[11] Moreover, Upp observed

---

[4]Declaration of David Wilson, ¶ 6; Declaration of Mark Cote, ¶ 5-6; Deposition of Plaintiff, pp. 38-39.

[5]Declaration of David Wilson, ¶ 7; Declaration of Mark Cote, ¶ 6; Deposition of Plaintiff, pp. 37-38.

[6]Declaration of Mark Cote, ¶ 6; Deposition of Plaintiff, p. 37.

[7]Declaration of David Wilson, ¶ 8; Declaration of Mark Cote, ¶ 7.

[8]Declaration of David Wilson, ¶ 8; Declaration of Mark Cote, ¶ 7; Deposition of Plaintiff, pp. 39-40.

[9]Id.

[10]Declaration of John Upp, ¶ 4, attached as Exhibit 7 to Defendants' Motion for Summary Judgment.

[11]Declaration of John Upp, ¶ 4; Inmate Injury Assessment and Followup, attached as Attachment A to Exhibit 7 to Defendants' Motion for Summary Judgment.

that plaintiff had a full range of motion in his shoulder and an equal strength grip in each hand.[12] Given those findings, Upp concluded that plaintiff was not seriously injured and he only provided plaintiff with Ibuprofen and counseled him to elevate and ice his shoulder.[13] Upp also asserts that he told plaintiff that, if plaintiff's shoulder pain persisted, plaintiff should follow up with a nurse in the morning.[14]

On August 13, 2007, defendant Eleizer Sta. Cruz, a physician's assistant at FCI Milan, assessed plaintiff.[15] According to Sta. Cruz's Declaration and treatment notes, plaintiff told Sta. Cruz that his shoulder felt better, but that now his back hurt, pain radiated to his left leg, and he had a right thumb injury.[16] Sta. Cruz's physical examination of plaintiff's back, shoulder, and thumb did not reveal any significant findings and, because he assessed plaintiff's condition as not serious, Sta. Cruz advised plaintiff to manage his pain with cold compresses and Ibuprofen.[17]

On August 27, 2007, Sta. Cruz again assessed plaintiff after plaintiff complained of lower back pain.[18] According to Sta. Cruz's Declaration and treatment notes, he examined plaintiff and

---

[12] Declaration of John Upp, ¶ 5.

[13] Declaration of John Upp, ¶¶ 5-6.

[14] Declaration of John Upp, ¶ 6.

[15] Declaration of Eleizer Sta. Cruz, ¶ 4, attached as Exhibit 8 to Defendants' Motion for Summary Judgment; Medical Record, August 13, 2007; attached as Attachment A to Exhibit 8 to Defendants' Motion for Summary Judgment.

[16] Id.

[17] Id.

[18] Declaration of Eleizer Sta. Cruz, ¶ 5; Medical Record, August 27, 2007; attached as Attachment B to Exhibit 8 to Defendants' Motion for Summary Judgment.

again determined that plaintiff's back condition was relatively minor.[19] Sta. Cruz recommended Ibuprofen and moist heat compresses to lessen plaintiff's low back pain, and he also requested x-rays of plaintiff's lumbosacral spine as a precaution.[20] The x-ray of plaintiff's lumbosacral spine was negative and it showed no evidence of a recent or old fractures, no bone changes and that plaintiff's sacroiliac joints appeared normal.[21]

On September 6, 2007, defendant Restituto Pomaloy, a physician's assistant at FCI Milan, assessed plaintiff for pain in plaintiff's lower back.[22] According to Pomaloy, after conducting a physical examination, he provided plaintiff with materials on specific back exercises that, if done consistently, could help alleviate plaintiff's back pain.[23]

---

[19]Id.

[20]Id.

[21]X-ray results, August 30, 2007; attached as an Exhibit to Plaintiff's Response and as part of Exhibit 11 to Defendants' Motion to Summary Judgment.

[22]Declaration of Restituto Pomaloy, ¶ 4, attached as Exhibit 9 to Defendants' Motion for Summary Judgment; Medical Record, August 27, 2007, attached as Attachment A to Exhibit 9 to Defendants' Motion for Summary Judgment.

[23]Id.

On September 17, 2007, Sta. Cruz assessed plaintiff for pain in his right thumb and lower back.[24] According to his Declaration and treatment notes, after that examination, Sta. Cruz again recommended Ibuprofen and moist heat compresses for pain management, while also informing plaintiff about stretching exercises that could reduce stiffness in plaintiff's back.[25] Defendant Sta. Cruz also requested x-rays of plaintiff's right thumb and right hand, and those x-rays revealed no abnormalities.[26]

On January 7, 2008, Pomaloy assessed plaintiff for pain in plaintiff's lower back and right elbow.[27] According to his Declaration and treatment notes, Pomaloy's examination revealed tenderness and a cystic nodule in plaintiff's elbow.[28] Pomaloy also observed that plaintiff's back was tender when plaintiff bent over, but Pomaloy did not observe any other deformity.[29] Pomaloy counseled plaintiff to take Ibuprofen and apply ice, in addition to also requesting x-rays of plaintiff's lumbosacral spine and right elbow.[30] The x-ray of plaintiff's right

---

[24]Declaration of Eleizer Sta. Cruz, ¶ 7; Medical Record, September 17, 2007; attached as Attachment C to Exhibit 8 to Defendants' Motion for Summary Judgment.

[25]Id.

[26]X-ray results, October 2, 2007, October 9, 2007; attached as Exhibits to Plaintiff's Response and as part of Exhibit 11 to Defendants' Motion for Summary Judgment; Declaration of Eleizer Sta. Cruz, ¶ 7.

[27]Declaration of Restituto Pomaloy, ¶ 5; Medical Record, January 7, 2008, attached as Attachment B to Exhibit 9 to Defendants' Motion for Summary Judgment.

[28]Id.

[29]Id.

[30]Id.

elbow revealed: "Mild degenerative changes of the ulnar humeral and radial humeral joints. There are some small bony fragments at the coronoid and olecranon processes of the ulna. A few of these could represent loose bodies within the elbow joint."[31] Additionally, with respect to plaintiff's lumbosacral spine, the x-rays showed no evidence of recent or old fractures, no bone changes and that the alignment of plaintiff's vertebrae was normal.[32]

On January 25, 2008, defendant Stephen Gidel, a physician's assistant, examined plaintiff.[33] According to Gidel's Declaration and treatment notes, plaintiff requested the results of previous x-rays of his elbow and a refill of his prescription for Ibuprofen during the visit. (Declaration of Stephen Gidel, ¶ 4; attached as Exhibit 1 to Defendants' Motion for Summary Judgment; Medical Record, January 25, 2008; attached as Attachment A to Exhibit 1 to Defendants' Motion for Summary Judgment) Gidel advised plaintiff of the results of the x-rays and refilled the prescription for Ibuprofen, while also cautioning plaintiff not to exceed the recommended daily dosage.[34]

---

[31] X-ray results, January 15, 2008, attached as an Exhibit to Plaintiff's Response and as part of Exhibit 11 to Defendants' Motion for Summary Judgment.

[32] Id.

[33] Declaration of Stephen Gidel, ¶¶ 1-4, attached as Exhibit 1 to Defendants' Motion for Summary Judgment; Medical Record, January 25, 2008, attached as Attachment A to Exhibit 1 to Defendants' Motion for Summary Judgment.

[34] Declaration of Stephen Gidel, ¶ 4; Medical Record, January 25, 2008.

On March 10, 2008, Gidel examined plaintiff after plaintiff complained of low back pain.[35] According to his Declaration and treatment notes, Gidel assessed plaintiff and determined that plaintiff had a decreased range of motion in his back, a flattened lumbar curve, and some tenderness.[36] Gidel also noted at that time that plaintiff's gait and x-rays were normal, and he therefore recommended that plaintiff manage his pain with moist heat compresses and analgesics, such as Ibuprofen.[37]

Gidel's Declaration and treatment notes also state that, on April 28, 2008, plaintiff reported to Gidel that plaintiff had a problem with his right elbow and that he had visited Health Services several times, only to be told that nothing was wrong.[38] The Declaration and notes further state that plaintiff was quite upset and left the clinic angry.[39]

On June 30, 2008, plaintiff submitted a form requesting medical treatment for pain.[40] On July 1, 2008, the request was replied to and, in that response, plaintiff was advised to talk to a physician's assistant.[41]

---

[35]Declaration of Stephen Gidel, ¶ 5; Medical Record, February 19, 2008, attached as Attachment B to Exhibit 1 to Defendants' Motion for Summary Judgment.

[36]Id.

[37]Id.

[38]Declaration of Stephen Gidel, ¶ 6; Medical Record, April 28, 2008, attached as Attachment C to Exhibit 1 to Defendants' Motion for Summary Judgment.

[39]Id.

[40]Inmate Request to Staff, June 30, 2008; attached as an Exhibit to Plaintiff's Response.

[41]Id.

On July 3, 2008, plaintiff submitted a form requesting medical treatment for his right elbow.[42] On July 9, 2008, a prison staff member responded and stated that plaintiff should sign up for sick call.[43]

On July 10, 2008, plaintiff submitted a form requesting a referral to an orthopedic surgeon for medical treatment for his right elbow and hand.[44] That same day, a prison staff member responded and again stated that plaintiff should sign up for sick call.[45]

On August 15, 2008, Gidel assessed plaintiff after plaintiff complained about pain in his right elbow.[46] According to Gidel's Declaration and treatment notes, the examination confirmed Gidel's earlier assessment that the source of plaintiff's pain was degenerative change associated with mild arthritis and that the pain could be conservatively managed with Ibuprofen.[47] Gidel also states, however, that he still requested a referral to an orthopedic surgeon for a consultation due to the persistence of plaintiff's complaints.[48]

---

[42]Inmate Request to Staff, July 3, 2008; attached as an Exhibit to Plaintiff's Response.

[43]Id.

[44]Inmate Request to Staff, July 10, 2008; attached as an Exhibit to Plaintiff's Response.

[45]Id.

[46]Declaration of Stephen Gidel, ¶ 7; Medical Record, August 15, 2008; attached as Attachment D to Exhibit 1 to Defendants' Motion for Summary Judgment.

[47]Id.

[48]Declaration of Stephen Gidel, ¶ 7.

On August 20, 2008, defendant William Malatinsky, M.D., FCI Milan's Clinical Director, assessed plaintiff's right elbow and lower back.[49] According to his Declaration and treatment notes, Malatinsky found plaintiff's right elbow to be essentially normal and that his lower back was slightly tender.[50] Malatinsky also states that, as an exercise of caution, he approved the pending consultation request for further evaluation of plaintiff's elbow by an orthopedic specialist.[51]

On August 27, 2008, Kanwaldeep S. Sidhu, M.D., an orthopedic surgeon, examined plaintiff.[52] According to Dr. Sidhu's Declaration and consultation sheet, he found that plaintiff had no tenderness, a full range of motion, and normal flexion and extension upon physical examination.[53] With respect to the x-rays plaintiff had undergone, Dr. Sidhu noted mild degenerative joint disease and possible small bony fragments at olecronan process.[54] In

---

[49]Declaration of William Malatinsky, M.D., ¶¶ 2-5, attached as Exhibit 10 to Defendants' Motion for Summary Judgment; Record of Clinical Encounter; attached as Attachment A to Exhibit 10 to Defendants' Motion for Summary Judgment.

[50]Declaration of William Malatinsky, M.D., ¶ 5; Record of Clinical Encounter.

[51]Declaration of William Malatinsky, M.D., ¶ 5.

[52]Declaration of Kanwaldeep S. Sidhu, M.D., ¶¶ 1-3, attached as Exhibit 17 to Defendants' Motion for Summary Judgment; Consultation Sheet; attached as Attachment A to Exhibit 17 to Defendants' Motion to Dismiss.

[53]Declaration of Kanwaldeep S. Sidhu, M.D., ¶ 4; Consultation Sheet.

[54]Id.

conclusion, Dr. Sidhu noted that there were no surgical indicators and he recommended that plaintiff try the medication Feldene for three weeks.[55]

### III. Standard of Review

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(b). That rule states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

---

[55]Id.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

As discussed above, defendants seek summary judgment on plaintiff's claims against them in their official and individual capacities. However, in his response, plaintiff concedes that he is only suing defendants in their individual capacities and that any claims against defendants in their official capacities are waived. Therefore, this court recommends that defendants be granted summary judgment on such claims, to the extent plaintiff makes them, and will only discuss the claims against defendants in their individual capacities. With respect to those claims, defendants all argue that they are entitled to qualified immunity. Defendants Bayoneto also argues that he is entitled to summary judgment due to a lack of personal involvement in the alleged constitutional violations. This court agrees with both arguments made by defendants.

### A. Qualified Immunity

Defendants all argue that they are entitled to qualified immunity with respect to plaintiff's claim that they were deliberately indifferent to his serious medical needs. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a

mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Here, defendants only argue that there was no constitutional violation and they concede that the constitutional right was clearly established. Elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's

obligation to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 102-103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle, 429 U.S. at 103-104. To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004). However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'" Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

Here, given the extensive medical record detailed above, it is clear that plaintiff has received significant medical attention and that plaintiff's claim of alleged deliberate indifference is merely a case of disagreement with the course of treatment provided, which is insufficient to establish an Eighth Amendment violation.  Plaintiff has been examined by medical personnel and undergone x-rays numerous times following his fall.  He has also been prescribed pain medications and been advised of exercises that can relieve pain.  Additionally, plaintiff was seen by a specialist, as he requested, and that specialist concurred with plaintiff's earlier treatment.

As discussed above, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  Westlake, 537 F.2d at 860 n. 5.  Where, as here, "a

-16-

prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake, 537. F.2d at 860 n. 5. Therefore, this court recommends that defendants' motion for summary judgment be granted.

**B. Personal Involvement**

To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983. Shehee, 199 F.3d at 300.

In this case, defendant Bayoneto's Declaration provides that, while he is a physician's assistant at FCI Milan, he has not provided any medical treatment to plaintiff since August 8, 2007, which was prior to plaintiff's fall. (Declaration of Mario Bayoneto, ¶¶1-3; attached as

Exhibit 14 to Defendants' Motion for Summary Judgment) Moreover, defendant Bayoneto's name does not appear in any of the medical records provided by the parties in this case and plaintiff has not submitted any evidence suggesting that Bayoneto was personally involved in the alleged constitutional violations. Therefore, this court also recommends that defendant Bayoneto be granted summary judgment due to a lack of personal involvement.

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion be **GRANTED,** summary judgment be entered in favor of defendants, and this case be closed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

> S/Virginia M. Morgan
> Virginia M. Morgan
> United States Magistrate Judge

Dated: September 30, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and Earnest Taylor via the Court's ECF System and/or U. S. Mail on September 30, 2010.

> s/J. Johnson
> Case Manager to
> Magistrate Judge Virginia M. Morgan